UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.: 05-61319-CIV-COOKE/BROWN

FRANK DeMARIA, on his own behalf
and others similarly situated,

    Plaintiff,

v.

RYAN P. RELOCATOR COMPANY, a
Florida corporation, and RYAN G.
NICHOLSON, individually,

    Defendants.
_____/

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE is before the Court upon Defendants' Motion for Summary Judgment (DE 67), filed December 1, 2006.[1] Plaintiff filed his opposition on December 27, 2006. Defendants filed their reply on January 2, 2007.[2] The Court having reviewed the Motions finds, for the reasons set forth below, that Defendants' Motion for Summary Judgment should be denied.

---

[1] The Court had difficulty locating the Defendants' statement of undisputed facts because it was filed as Exhibit Number Six to their Motion for Summary Judgment. The Defendants are therefore advised for future reference that their statement of undisputed facts should not be filed as an exhibit but instead should be filed separately as its own document.

[2] Defendants' reply brief was twelve pages, however, pursuant to Local Rule 7.1(C) absent prior permission of the Court a reply brief may not exceed ten pages. See S.D. Fla. L.R. 7.1(C). Notably, Defendants did not request permission to exceed the page limits outlined in Local Rule 7.1(C). Moreover, this Court did not grant such permission. Thus, Defendants' reply brief violates Local Rule 7.1(C). The Court will not take any remedial action at this juncture, but, it would behoove Defense Counsel to review this Court's Local Rules thoroughly as any such future violation will result in this Court striking the offending pages.

I.     **BACKGROUND**

Plaintiff Frank DeMaria ("Plaintiff" or "DeMaria") filed this action on August 5, 2005. In his Amended Complaint, DeMaria alleges that he was employed as a laborer by Defendant Ryan P. Relocator Company ("Ryan Relocator") and Defendant Ryan G. Nicholson ("Nicholson"). DeMaria avers that during the course of his employment the Defendants failed to properly pay him minimum wage and overtime in accordance with the Fair Labor Standards Act ("FLSA") and Section 448.08 of the Florida Statutes. In the present action, DeMaria seeks to recoup the unpaid wages allegedly due to him as well as liquidated damages, attorney fees and costs.

II.    **PROCEDURAL HISTORY**

Defendants filed their Motion for Summary Judgment on December 1, 2006. Plaintiff filed his opposition on December 27, 2006. Defendants filed their reply on January 2, 2007. Consequently, Defendants' Motion for Summary Judgment is ripe for adjudication.

III.   **SUMMARY JUDGMENT STANDARD**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). According to the U.S. Supreme Court, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477

U.S. 317, 322 (1986). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). See, Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"). However, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

**IV.   ANALYSIS**

In their Motion, Defendants[3] argue that they are entitled to summary judgment on Counts One and Two because: (1) the Defendants are not an enterprise engaged in commerce for

---

[3] Defendants did not raise the issue of joint employment under the FLSA, therefore, this Order will not address whether Defendant Peter T. Nicholson is a proper Defendant in this action. Also, for purposes of this Order only the Court will assume, without deciding, that Defendant Peter T. Nicholson is a joint employer.

purposes of the FLSA; and (2) pursuant to the Motor Carrier Act ("MCA") DeMaria is exempt from the FLSA's overtime provisions. The Court shall address each of these arguments in turn.

The Court must address the obvious deficiencies and flaws contained within Defendants' Motion. Specifically, Defendants' Motion for Summary Judgment is rife with run-on sentences, improper citations, misspellings, and a plethora of other fundamental problems. For instance, on page five of the Motion, Defense Counsel utilizes a quotation without citing the authority from which the quotation derives. Mot. at 5. Furthermore, the quotation apparently contains an internal quotation, however, Defense Counsel failed to make reference to the internal authority and failed to use appropriate punctuation to signify the internal quotation. See id. Even more astounding, at one point in the Motion, Defense Counsel appeared to be confused as to which Party he represented as he stated "*Plaintiff* will not burden this Court with a lengthy repetition of the oft cited, Rule 56, Summary Judgment standard." Id. (emphasis added). The Court is dismayed that the Defendants' brief is fraught with such basic errors — at which any Legal Writing professor would cringe.

### A. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON COUNT ONE OF THE AMENDED COMPLAINT

Count One of the Amended Complaint asserts a claim for violation of the FLSA's overtime provisions. See Amended Compl. In their Motion, Defendants contend that they are entitled to summary judgment on Count I because DeMaria's overtime claims are exempt pursuant to the Motor Carrier Exemption.[4]

---

[4] Defendants also argue that the FLSA's overtime provisions are not applicable to this action because their earnings are insufficient to trigger enterprise coverage and DeMaria failed to assert a claim for individual coverage under the FLSA. The Court shall address this argument in Part IV, B of this Order.

### 1. THE MOTOR CARRIER EXEMPTION[5]

DeMaria claims that he worked in excess of forty hours per week during his employment with Defendants and is therefore entitled to overtime compensation under the FLSA. Pursuant to § 207(a)(1) of the FLSA, an employer must compensate employees not less than one and one-half times their regular rate for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). In the event that an employer fails to pay overtime, where required by law, an employee may sue an employer for unpaid overtime wages. 29 U.S.C. § 216. The provisions of § 207, however, are not applicable to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49."[6] 29 U.S.C. § 213(b)(1). This exemption is commonly referred to as the Motor Carrier Exemption. In describing the parameters of the Motor Carrier Exemption, the Eleventh Circuit has explained that "[t]he Secretary has power to establish qualifications and maximum hours of service for employees who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act; and (2) engage in activities of a character

---

[5]Because the FLSA is remedial, it is to be broadly construed. Antenor v. D & S Farms, 88 F.3d 925 (11th Cir.1996). Exemptions under the FLSA are to be narrowly construed against the employer who asserts them. See Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 594 (11th Cir. 1995) (citing Brock v. Louvers and Dampers, Inc., 817 F.2d 1255, 1256 (6th Cir. 1987). Further, the employer bears the burden of establishing entitlement to the exemption. Jeffery, 64 F.3d at 594.

[6]Title 49 U.S.C. § 31502(b) states "[t]he Secretary of Transportation may prescribe requirements for – (1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and (2) qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation." 49 U.S.C. § 31502(b).

directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." Baez v. Wells Fargo Armored Service Corp., 938 F.2d 180, 181- 82 (11th Cir.1991) (citations omitted). See Alvarado v. I.G.W.T. Delivery Systems, Inc., 410 F.Supp.2d 1272, 1276 (S.D.Fla. 2006) (quoting Baez, 938 F.2d at 181-82). Thus, in order to determine whether the motor carrier exemption is applicable the Court must determine: (1) whether Defendant Ryan P. Relocator Company is a motor carrier subject to the Secretary of Transportation's jurisdiction; and (2) whether DeMaria was engaged in activity directly affecting the safety of operation of motor vehicles in interstate commerce. Rossi v. Associated Limousine Services, Inc., 438 F.Supp.2d 1354, 1360 (S.D.Fla. 2006).

### a. RYAN P. RELOCATOR COMPANY IS A MOTOR CARRIER

Under the Motor Carrier Act, the term motor carrier is defined as "a person providing commercial motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). Additionally, the term transportation "includes -- a motor vehicle . . . or equipment of any kind related to the movement of passengers or property." 49 U.S.C. § 13102(23)(A). In the present action, Defendant Ryan P. Relocator Company provides motor vehicle transportation of goods and/or freight to warehouses, retail outlets, and customers. See P Stmt. of Disputed Facts at ¶ 2. Further, it appears that some of Defendant Ryan P. Relocator's transportation of goods involves interstate transportation. Id. at ¶ 17; Ds' Stmt. of Undisputed Facts at ¶¶ 6, 17. Consequently, it appears that the Defendants are motor carriers for purposes of the MCA.[7]

---

[7] See supra note 3.

### b.   DEFENDANTS FAILED TO ESTABLISH THAT DEMARIA WAS ENGAGED IN ACTIVITY DIRECTLY AFFECTING THE SAFETY OF OPERATION OF MOTOR VEHICLES IN INTERSTATE COMMERCE

The Parties do not dispute that from November 2004 to February 2005 DeMaria transported furniture from a central warehouse in Suwanee, Georgia to drop off locations in Tennessee, North Carolina, and South Carolina.  See Def. Stmt. of Undisputed Facts at ¶ 17; P. Stmt. of Disputed Facts at ¶ 17.  These interstate deliveries, from November 2004 to February 2005, clearly fall within the purview of the Motor Carrier Exemption.  See 29 U.S.C. § 213(b)(1).  Moreover, in his opposition DeMaria states that he "is not seeking overtime wages from the period of November 2004 through February 2005." Opp. at note 2.  Therefore, the Court will not further address the Motor Carrier Exemption's applicability to DeMaria's employment with the Defendants during the period of November 2004 to February 2005.

In his opposition, DeMaria contends that during his employment with Defendants, in Florida, he did not transport goods or furniture outside of the state of Florida and therefore the Motor Carrier Exemption is inapplicable to that time frame.  In response, the Defendants argue that the furniture and goods that DeMaria transported originated from outside of the state of Florida, thus, DeMaria's in state delivery of those goods was part of the practical continuity of interstate commerce for purposes of the Motor Carrier Exemption.  To support their position, Defendants relied upon several cases which held that the Motor Carrier Exemption was applicable where the plaintiffs solely transported goods intrastate.  See e.g. Baez v. Wells Fargo Armored Service Corp., 938 F.2d 180 (11th Cir.1991); Alvarado v. I.G.W.T. Delivery Systems, Inc., 410 F.Supp.2d 1272 (S.D.Fla. 2006).  However, in these cases the courts found that the Motor Carrier Exemption was applicable because, although the plaintiffs only engaged in

intrastate transportation, the goods which they transported were ultimately bound for interstate destinations. See e.g. Baez, 938 F.2d 180, 182 (11th Cir.1991) (holding that plaintiffs were exempt under the Motor Carrier Exemption where they traveled intrastate to deliver checks and other instruments which were bound for banks outside the state of Florida); Alvarado v. I.G.W.T. Delivery Systems, Inc., 410 F.Supp.2d 1272, 1277 (S.D.Fla. 2006) (finding that the Motor Carrier Exemption applied to employees who engaged in the intrastate delivery of letters and packages where the letters and packages ultimate destination was interstate). Defendants failed to present this Court with evidence to establish that the goods which DeMaria transported were bound for interstate or international destinations. See Mot. As a result, Baez and Alvarado are not applicable to the present action.

In their Reply brief, Defendants argue that the furniture which DeMaria transported from Lakeland, Florida to Pompano Beach, Florida retained its interstate character because the goods were immediately transported to customers' homes from the Pompano Beach facility. To support this contention, Defendants relied upon DeMaria's deposition testimony in which he indicated that after he arrived with the furniture in Pompano Beach, Florida the home delivery crews would unhook the trailers and then deliver the furniture to the end customers. See DeMaria Dep. at 18-20. This evidence, however, is insufficient to establish that the intrastate shipment of the furniture — from the Lakeland facility to the Pompano Beach facility — was part of a continuous movement in interstate commerce.

In Shew v. Southland Corp, 370 F.2d 376 (5th Cir. 1966), the Fifth Circuit held that dairy products which originated from outside of Texas but stopped in Dallas, Texas, temporarily, were part of a continuous movement in interstate commerce such that the truck drivers who delivered

the products locally in Texas were engaged in interstate commerce for purposes of the Motor Carrier Exemption.[8] In reaching this conclusion, the Fifth Circuit analyzed a prior Interstate Commerce Commission opinion (Ex Parte No. MC-48, 71 M.C.C. 17), which was codified in 29 C.F.R. § 782.7. In relevant part, § 782.7 states:

> The Interstate Commerce Commission held that transportation confined to points in a single State from a storage terminal of commodities which have had a prior movement by rail, pipeline, motor, or water from an origin in a different State is not in interstate or foreign commerce within the meaning of part II of the Interstate Commerce Act if the shipper has no fixed and persisting transportation intent beyond the terminal storage point at the time of shipment. See Ex parte No. MC-48 (71 M.C.C. 17, 29). The Commission specifically ruled that there is not fixed and persisting intent where (i) at the time of shipment there is no specific order being filled for a specific quantity of a given product to be moved through to a specific destination beyond the terminal storage, and (ii) the terminal storage is a distribution point or local marketing facility from which specific amounts of the product are sold or allocated, and (iii) transportation in the furtherance of this distribution within the single State is specifically arranged only after sale or allocation from storage.

Thus, goods transported through the channels of interstate commerce into a particular state which are then distributed from a warehouse or central location within the state to end destinations (within the same state) may be considered part of a continuous movement in interstate commerce if there is fixed and persisting transportation intent beyond the terminal storage point at the time of shipment. For instance, in Baird v. Wagoner Transportation Co., 425 F.2d 407 (6th Cir. 1970), cert. denied, 400 U.S. 829 (1970), the Sixth Circuit held that drivers of a transportation company's tank vehicles, used to transport an oil company's products in Michigan, were not exempt under the Motor Carrier Exemption where the oil company shipped petroleum products

---

[8]In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit handed down prior to the close of business on September 30, 1981.

to a terminal in Michigan and knew each customer to be served, but, the specific quantity to each customer was not fixed at the time of shipment and final transportation arrangements were not made until after the products were inventoried at the Michigan terminal.  See Watkins v. Ameripride Services, 375 F.3d 821 (9th Cir. 2004) (holding that the Motor Carrier Exemption did not apply where an employee made intrastate deliveries of goods which were shipped via interstate means to a warehouse where they were stored until customer orders were received).

In the present action, Defendants have failed to present any evidence to establish that there was a fixed and persisting transportation intent beyond the terminal storage point at the time that the furniture was shipped to the Lakeland warehouse.  While the Defendants did provide evidence that the furniture was immediately delivered to customers after DeMaria transported it from the Lakeland warehouse to the Pompano Beach warehouse, Defendants did not provide this Court with any evidence suggesting that the furniture in question was shipped to the Lakeland warehouse pursuant to specific customer orders or contracts.  Furthermore, Defendants failed to provide this Court with any evidence outlining the relevant timetable for the shipments, consequently, the Court is unable to discern how long the goods were stored in Lakeland before their ultimate delivery to customers.  See Mot.  Therefore, Defendants have failed to carry their burden to establish that DeMaria's overtime claims are exempt under the Motor Carrier Exemption.

### B. DEMARIA PROPERLY ASSERTED ENTITLEMENT TO INDIVIDUAL COVERAGE UNDER THE FLSA

Section 206(a) of the FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for

commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at" a rate of not less than $5.15 per hour. 29 U.S.C. § 206(a). Pursuant to § 207(a)(1) of the FLSA, an employer must compensate employees not less than one and one-half times their regular rate for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). Under the FLSA, the phrase "enterprise engaged in commerce or in the production of goods for commerce" means an enterprise that:

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated);

29 U.S.C. § 203(s)(1)(A)(i)-(ii). Defendants contend that they are not covered by the FLSA because Ryan Relocator did not have gross annual sales of at least $500,000 per year. However, the minimum wage and overtime provisions of the FLSA cover not only enterprises engaged in commerce or the production of goods for commerce, but also employees who themselves are engaged in commerce or in the production of goods for commerce. See 29 U.S.C. §§ 206(a) and 207(a). Thus, for individual coverage under the FLSA to apply DeMaria must show that he was (1) engaged in commerce; or (2) engaged in the production of goods for commerce.

It has been firmly established that the phrase "engaged in commerce" within the meaning of the FLSA is to be given a broad, liberal construction. Brennan v. Wilson Bldg., Inc., 478 F.2d 1090, 1093 (5th Cir. 1973), cert. denied, 414 U.S. 855 (1973). "[F]or an employee to be 'engaged in commerce' under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of

interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel." Thorne v. All Restoration Services, Inc., 448 F.3d 1264, 1266 (11th Cir. 2006) (citing 29 C.F.R. §§ 776.23(d)(2) and 776.24). See McLeod v. Threlkeld, 319 U.S. 491, 497 (1943).

DeMaria asserts that he was engaged in commerce during his tenure with the Defendants because the bulk of his work involved transporting furniture, which was made and transported from outside of Florida, between two warehouses within Florida. Opp. at 5. See P Ex. 2, DeMaria Dec. The Defendants did not address the merits of DeMaria arguments and evidence concerning individual coverage under the FLSA. Instead, the Defendants argue that DeMaria cannot assert individual coverage under the FLSA because he failed to properly allege it in his Amended Complaint. Specifically, Defendants contend that Paragraph Six of the Amended Complaint only alleges individual coverage under the FLSA for jurisdiction purposes only not for the substantive FLSA claim. See Mot. Notably, Defendants did not cite to any caselaw or other authority to support this unavailing contention.

Paragraph Six of the Amended Complaint states "[a]t all material times relevant to this action, Defendant RYAN was an enterprise covered by the FLSA, and as defined by 29 U.S.C. § 203(r) and 203(s). Additionally, Plaintiff was individually engaged in interstate commerce during his employment for jurisdictional purposes only." Amended Compl. ¶ 6. "The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds

upon which it rests." Conley v. Gibson, 355 U.S. 41, 47-48 (1957). Against, this backdrop the Court finds that Paragraph Six gave the Defendants ample notice that DeMaria was alleging individual coverage under the FLSA. Paragraph Six plainly alleges that DeMaria was individually engaged in interstate commerce. Rule 8(a) of the Federal Rules of Civil Procedure does not require artful pleading, thus, a simple allegation of individual coverage will suffice. See Fed.R.Civ.P. 8(a). Furthermore, the undersigned is unwilling to adopt Defendants' construction of the phrase "for jurisdictional purposes only" because to do so would obviate the clear allegations of individual FLSA coverage asserted within Paragraph Six.

     Moreover, it appears that DeMaria engaged in commerce during the course of his employment with the Defendants. As previously discussed, DeMaria presented evidence which suggested that the bulk of his work for the Defendants involved transporting furniture, that was made and transported from outside of Florida, between two warehouses within Florida. Opp. at 5. See P Ex. 2, DeMaria Dec. An analogous fact pattern was presented to the Fifth Circuit in Brennan, where the Fifth Circuit held that elevator operators were engaged in interstate commerce, for purposes of the FLSA, where the elevator operators frequently transported persons delivering interstate mail, freight, and parcel post within a seventeen story building. The court stated "the district court correctly, we think, analogized the labor of elevator operators transporting mail and freight to the labor of truck drivers transporting interstate goods between two points in the same state. We agree with the district court and the Secretary that both activities satisfy the 'transportation' requirement in the Act's definition of commerce. Brennan, 478 F.2d at 1098 (citations omitted). Additionally, the Eleventh Circuit held, albeit in an unpublished opinion, that a laborer was engaged in commerce under the FLSA because his duties

as a laborer required him to transport fumigation materials which had traveled in interstate commerce to the defendant-company's customers within the state. See Alonso v. Garcia, No. 05-11373, 2005 WL 1901682, (11th Cir. Aug. 10, 2005). Moreover, in Walling v. Jacksonville Paper Co., 317 U.S. 564 (1943), the U.S. Supreme Court held that the FLSA was applicable to truck drivers for a wholesale paper company that transported interstate goods, from company warehouses within a state to retail stores within the same state, where the interstate goods had been temporarily detained at the in-state company warehouses prior to their delivery to the retail stores. In reaching this conclusion, the court stated "[t]he entry of the goods into the warehouse interrupts but does not necessarily terminate their interstate journey. A temporary pause in their transit does not mean that they are no longer 'in commerce' within the meaning of the Act . . . if the halt in the movement of the goods is a convenient intermediate step in the process of getting them to their final destinations, they remain 'in commerce' until they reach those points. Then there is a practical continuity of movement of goods until they reach the customers for whom they are intended." Id. at 568.

In the present action, it seems that the furniture goods DeMaria transported continued to flow in interstate commerce until they reached their intended customers, which could not be consummated without DeMaria's transport of the goods, from the Lakeland warehouse to the Pompano Beach warehouse. See Brennan, 478 F.2d at 1095-96. Thus, it appears that DeMaria engaged in commerce, for purposes of the FLSA, during the course of his employment with the Defendants.[9] See Mitchell v. Sunshine Dept. Stores, Inc., 292 F.2d 645 (5th Cir. 1961) (holding

---

[9]The definition of the term "interstate commerce" is broader under the FLSA than it is under the Motor Carrier Act. Galbreath v. Gulf Oil Corp., 413 F.2d 941, 944 (5th Cir. 1969); In Baird, 425 F.2d at 410, the Sixth Circuit summarized this distinction by stating "[w]hereas the

that although 90% of the merchandise received at the central warehouse of a retail chain remained there until it was shipped to the retail stores, the merchandise remained in commerce until it reached the retail stores and all of the central office and warehouse employees who devoted a substantial part of their work to handling the merchandise were engaged in commerce). Consequently, the Defendants are not entitled to summary judgment on DeMaria's overtime and minimum wage claims.[10]  Finally, given that Counts I and II remain pending in this action the Court will not decline jurisdiction over Count III's state law claim.

V. CONCLUSION

For the reasons set forth above, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment is **DENIED**.

---

FLSA covers employees 'engaged in commerce or in the production of goods for commerce' the MCA only covers employees actually 'part of a continuous movement in interstate commerce.' Whereas the former Act would apply to employees 'in the production of goods for commerce' even though such employees handled or sold such goods prior to or after their actual 'continuous movement' in interstate commerce, the MCA would not." See 29 C.F.R. § 782.7.  Thus, this Court's finding that DeMaria was not exempt under the Motor Carrier Exemption is not incongruent with its finding that DeMaria engaged in interstate commerce for purposes of the FLSA.

[10]In their Motion, Defendants asserted that they are entitled to summary judgment on DeMaria's minimum wage claim because DeMaria was paid more than the minimum wage. Mot. at 15.  Furthermore, Defendants argue that they attempted to pay DeMaria for his final two weeks of work but DeMaria refused to return fuel cards and pick up his final pay check. Id.  The Court has considered these arguments but will not address them on summary judgment as they appear better suited for the trier of fact.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5th day of February, 2007.

_____
MARCIA G. COOKE
United States District Judge

*Copies furnished to:*

*All Counsel of Record*